STEPHANIE S. CHRISTENSEN
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
      1100 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-6527
      Facsimile: (213) 894-6269
      E-mail:  scott.paetty@usdoj.gov

LORINDA I. LARYEA
Acting Chief, Fraud Section
Criminal Division, U.S. Department of Justice
JENNIFER BILINKAS
Trial Attorney, U.S. Department of Justice
Criminal Division, Fraud Section
OLIVIA ZHU
Trial Attorney, U.S. Department of Justice
Criminal Division, Money Laundering & Asset Recovery Section
      1400 New York Avenue NW, 3rd Floor
      Washington, DC 20530
      Telephone: (202) 305-3928
      E-mail:   Jennifer.Bilinkas@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED
CLERK, U.S. DISTRICT COURT

8/16/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: ____JB____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR  2:22-cr-00371-PA |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT MATEUS PINA MENDES |
| v. | |
| MATEUS PINA MENDES, | |
| Defendant. | |

     1.   This constitutes the plea agreement between MATEUS PINA
MENDES ("defendant") and the United States Attorney's Office for the
Central District of California ("USAO") and the United States
Department of Justice, Criminal Division, Fraud Section ("Fraud

Section"), in the investigation of fraudulent applications for loans under the Paycheck Protection Program and the Economic Injury Disaster Loan program.  This agreement is limited to the USAO and the Fraud Section (together referred to herein as the "Government") and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

2.   Defendant agrees to:

a.   Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the Government and provided by the Court, appear and plead guilty to a single-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with Wire Fraud in violation of 18 U.S.C. § 1343.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Agree that all court appearances, including his change of plea hearing and sentencing hearing, may proceed by video-teleconference ("VTC") or telephone, if VTC is not reasonably available, so long as such appearances are authorized by Orders of the Chief Judge Nos. 20-043, 20-186, 22-096 or another order, rule, or statute.  Defendant understands that, under the United States Constitution, the United States Code, and the Federal Rules of Criminal Procedure (including Rules 11, 32, and 43), he may have the

right to be physically present at these hearings.  Defendant understands that right and, after consulting with counsel, voluntarily agrees to waive it and to proceed remotely.  Defense counsel also joins in this consent, agreement, and waiver. Specifically, this agreement includes, but is not limited to, the following:

         i.   Defendant consents under Federal Rules of Criminal Procedure 5(f) and 10(c) and Section 15002(b) of the CARES Act to proceed with his initial appearance and arraignment by VTC or telephone, if VTC is not reasonably available.

         ii.   Defendant consents under Section 15002(b) of the CARES Act to proceed with his waiver of indictment, under Federal Rule of Criminal Procedure 7(b), by VTC or telephone, if VTC is not reasonably available.

         iii. Defendant consents under Section 15002(b) of the CARES Act to proceed with his change of plea hearing by VTC or telephone, if VTC is not reasonably available.

         iv.   Defendant consents under Section 15002(b) of the CARES Act to proceed with his sentencing hearing by VTC or telephone, if VTC is not reasonably available.

         v.   Defendant consents under 18 U.S.C. § 3148 and Section 15002(b) of the CARES Act to proceed with any hearing regarding alleged violations of conditions of pretrial release by VTC or telephone, if VTC is not reasonably available.

        f.   Not commit any crime or any act constituting obstruction of justice; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines

("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

g. Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

h. Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

<u>THE GOVERNMENT'S OBLIGATIONS</u>

3. The Government agrees to:

a. Not contest facts agreed to in this agreement.

b. Abide by all agreements regarding sentencing contained in this agreement.

c. At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

d. Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 16 or higher and provided that the Court does not depart downward in offense level or criminal history category. For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A, without regard to reductions in the term of imprisonment that may be permissible through the substitution

4

of community confinement or home detention as a result of the offense level falling within Zone B or Zone C of the Sentencing Table.

## NATURE OF THE OFFENSE

4.   Defendant understands that for defendant to be guilty of the crime charged in the single-count information, that is, committing wire fraud, in violation of 18 U.S.C. § 1343, the following must be true: (1) defendant knowingly participated in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, promises, or omitted facts.  Deceitful statements or half-truths may constitute false or fraudulent representations; (2) the statements made or facts omitted as part of the scheme were material, that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and (4) defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

## PENALTIES AND RESTITUTION

5.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1343, is: 20 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6.   Defendant understands that defendant will be required to pay full restitution to the victims of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the

Government's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim for any losses suffered by that victim as a result of any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty.  The parties currently believe that the applicable amount of restitution is approximately $143,283.67, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

7.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case

may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case make it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

10.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the Government agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the

Sentencing Guidelines factors set forth in paragraph 12 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning in or about May 2020 and continuing through in or about March 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant knowingly and with intent to defraud, devised, participated in, executed, and attempted to execute a scheme to defraud the SBA and SBA-approved lenders by means of material false and fraudulent pretenses, representations, and promises by fraudulently obtaining federal disaster relief funds distributed through the Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan ("EIDL") program, and fraudulently using those funds.

Defendant claimed to be the owner of Multi One Media, Made in One, Corner the Market, and Wakeover, which were businesses located in Beverly Hills, California, but were not registered nor had any operations or employees.  Defendant was also the owner of CuratedHigh LLC, a company registered in Wyoming with a registered business address in Beverly Hills, California.  At no time in 2019, 2020, or 2021 did any of these businesses pay payroll taxes to any state in the United States or to the federal government, nor did they incur payroll expenses or operating expenses.  Defendant did not file any taxes or tax forms on behalf of Multi One Media, Made in One, Corner the Market, Wakeover, or CuratedHigh LLC in 2019, 2020, or 2021. Defendant controlled a personal checking account in his own name, maintained at Wells Fargo Bank ending in 3113 (the "Wells Fargo 3113

account"), and used that account to receive fraudulent PPP and EIDL proceeds.

On or about July 7, 2020, defendant submitted a PPP application on behalf of the business, "Multi One Media," to Company 1, a New York-based PPP lender, (the "Company 1 One Media Application"). Through the Company 1 Multi One Media Application, defendant sought $20,575 in PPP funds.  The requested amount was based on defendant's knowingly false and fraudulent statement that Multi One Media had an average monthly payroll of $8,230 for one employee, and defendant' submission of a false and fraudulent 2019 Internal Revenue Service ("IRS") Schedule C showing $114,930.69 in gross receipts or sales. The Company 1 Multi One Media Application also included a purported 2019 1099-MISC form showing $114,930.69 in nonemployee compensation paid from CuratedHigh LLC to "Mateus Mendes DBA Multi One Media." Defendant knew that these statements were false and fraudulent, that Multi One Media was not a real business, nor did it have any employees or payroll expenses, and had not filed any tax forms or paid any taxes in 2019.  Defendant made these false and fraudulent statements knowing they were material, and in order to induce Company 1 to approve the PPP loan and cause the PPP funds to be wired to his bank account.

Based on the information provided in the Company 1 Multi One Media Application, Company 1 approved and funded a PPP loan in the amount of $20,500.00.  On or about July 29, 2020, the PPP funds were disbursed and then deposited, via interstate wire, into Mateus Mendes' Wells Fargo account ending in 3113.

Defendant also knowingly submitted false and fraudulent information, including the existence of payroll expenses, the

creation and submission of false information in purported IRS tax forms, and the operational status of the businesses, in the PPP and EIDL applications described in the table below.  Defendant made these false and fraudulent statements knowing they were material, and in order to induce the SBA, and the PPP lenders described in the table below, to approve the EIDL and PPP loans and cause the loan proceeds to be transferred via interstate wire to his bank account.

| No. | Business Applicant | Applied Amount | Disbursed Loan Amount | Processor/Lender | Loan Type | Approx. Application Date |
|---|---|---|---|---|---|---|
| 1 | CuratedHigh LLC | $1,000 advance; $2,000 loan requested | $1,000 advance; $2,000 loan disbursed | SBA | EIDL | 5/13/2020 |
| 2 | CuratedHigh LLC | $19,468.00 | $19,400.00 | Company 2 | PPP | 6/19/2020 |
| 3 | Mateus Mendes | $19,467.00 | $19,467.00 | Company 3/Company 4 | PPP | 6/18/2020 |
| 4 | Multi One Media | $20,575.00 | $20,500.00 | Company 1 | PPP | 7/7/2020 |
| 5 | Wakeover | $20,350.00 | $20,300.00 | Company 5 / Company 6 | PPP | 7/7/2020 |
| 6 | Made in One | $20,600.00 | n/a | Company 5 / Company 6 | PPP | 7/31/2020 |
| 7 | Corner the Market | $19,741.67 | $19,741.67 | Company 7 | PPP | 1/20/2021 |
| 8 | Wakeover | $20,300.00 | $20,300.00 | Company 6 | PPP | 1/20/2021 |
| 9 | Mateus Pina Mendes DBA Multi One Media | $20,575.00 | $20,575.00 | Company 1 | PPP | Closing date 2/7/2021 |
| 10 | Made in One | $20,614.00 | n/a | Company 8 / Company 6 | PPP | 3/9/2021 |

Furthermore, in each of the above PPP and EIDL applications submitted by defendant, defendant certified that, as the authorized representative of the businesses on whose behalf the applications

were submitted, defendant knew and understood the terms and rules of the PPP and EIDL programs, and that the funds were to be used by the recipient to only pay certain authorized business expenses.  Instead of using the PPP and EIDL loan proceeds for their stated and authorized business purposes consistent with PPP and EIDL rules, however, defendant knowingly misappropriated and used the PPP and EIDL loan proceeds for his own personal benefit, including the purchase of cryptocurrency and gold coins.

Defendant admits and agrees that as a result of defendant's fraudulent conduct, defendant intended to obtain at least approximately $184,690.67 and did obtain at least approximately $143,283.67.

<u>SENTENCING FACTORS</u>

11.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

12.  Defendant and the Government agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. §§ 2B1.1(a)(1) |
| Specific Offense Characteristics | | |
| Loss > $150,000 < $250,000 | +10 | U.S.S.G. § 2B1.1(b)(1)(F) |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1 |

The Government reserves the right to argue at sentencing that the sophisticated means enhancement pursuant to U.S.S.G. § 2B1.1(b)(10) also applies, and defendant reserves the right to argue against application of that enhancement.  The Government will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 3 are met and if defendant has not committed, and refrains from committing, acts constituting obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as discussed below.  Subject to Paragraph 25, the defendant and the Government agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed.  Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the Government were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the Government, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the Government would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

13.   Defendant understands there is no agreement as to either civil or criminal forfeiture.

14.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

15.   Defendant and the Government reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

16.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

1     g.    The right not to be compelled to testify, and, if

2  defendant chose not to testify or present evidence, to have that

3  choice not be used against defendant.

4     h.    Any and all rights to pursue any affirmative defenses,

5  Fourth Amendment or Fifth Amendment claims, and other pretrial

6  motions that have been filed or could be filed.

7               WAIVER OF APPEAL OF CONVICTION

8     17.   Defendant understands that, with the exception of an appeal

9  based on a claim that defendant's guilty plea was involuntary, by

10 pleading guilty defendant is waiving and giving up any right to

11 appeal defendant's conviction on the offense to which defendant is

12 pleading guilty.  Defendant understands that this waiver includes,

13 but is not limited to, arguments that the statute to which defendant

14 is pleading guilty is unconstitutional, and any and all claims that

15 the statement of facts provided herein is insufficient to support

16 defendant's plea of guilty.

17          LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

18    18.   Defendant agrees that, provided the Court imposes a total

19 term of imprisonment within or below the range corresponding to an

20 offense level of 16 and the criminal history calculated by the Court,

21 defendant gives up the right to appeal all of the following: (a) the

22 procedures and calculations used to determine and impose any portion

23 of the sentence; (b) the term of imprisonment imposed by the Court;

24 (c) the fine imposed by the Court, provided it is within the

25 statutory maximum; (d) to the extent permitted by law, the

26 constitutionality or legality of defendant's sentence, provided it is

27 within the statutory maximum; (e) the amount and terms of any

28 restitution order, provided it requires payment of no more than

14

$143,283.67; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

19.   The Government agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 16 and the criminal history calculated by the Court, the Government gives up its right to appeal any portion of the sentence, with the exception that the Government reserves the right to appeal the amount of restitution ordered if that amount is less than $143,283.67.

20.   Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

RESULT OF WITHDRAWAL OF GUILTY PLEA

21.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then the Government will be relieved of all of its obligations under this agreement.

EFFECTIVE DATE OF THIS AGREEMENT

22.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and the Government.

BREACH OF AGREEMENT

23.  Defendant agrees that if defendant, at any time after the effective date of this, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the Government may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the Government to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the Government in writing.  If the Government declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the Government will be relieved of all its obligations under this agreement.

1

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

2

3      24.   Defendant understands that the Court and the United States

4  Probation and Pretrial Services Office are not parties to this

5  agreement and need not accept any of the Government's sentencing

6  recommendations or the parties' agreements to facts or sentencing

7  factors.

8      25.   Defendant understands that both defendant and the

9  Government are free to: (a) supplement the facts by supplying

10 relevant information to the United States Probation and Pretrial

11 Services Office and the Court, (b) correct any and all factual

12 misstatements relating to the Court's Sentencing Guidelines

13 calculations and determination of sentence, and (c) argue on appeal

14 and collateral review that the Court's Sentencing Guidelines

15 calculations and the sentence it chooses to impose are not error,

16 although each party agrees to maintain its view that the calculations

17 in paragraph 12 are consistent with the facts of this case.  While

18 this paragraph permits both the Government and defendant to submit

19 full and complete factual information to the United States Probation

20 and Pretrial Services Office and the Court, even if that factual

21 information may be viewed as inconsistent with the facts agreed to in

22 this agreement, this paragraph does not affect defendant's and the

23 Government's obligations not to contest the facts agreed to in this

24 agreement.

25     26.   Defendant understands that even if the Court ignores any

26 sentencing recommendation, finds facts or reaches conclusions

27 different from those agreed to, and/or imposes any sentence up to the

28 maximum established by statute, defendant cannot, for that reason,

withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

27.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the Government and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

1

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2      28.   The parties agree that this agreement will be considered

3 part of the record of defendant's guilty plea hearing as if the

4 entire agreement had been read into the record of the proceeding.

5 AGREED AND ACCEPTED

6 UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
7 CALIFORNIA

8 STEPHANIE S. CHRISTENSEN
Acting United States Attorney

9

10  _Jennifer Bilinkas_                    August 12, 2022
SCOTT PAETTY                           Date
11 Assistant United States Attorney

12

JENNIFER BILINKAS
13 Trial Attorney, DOJ Fraud Section

14

15                                         7-29-22

MATEUS PINA MENDES                     Date
16 Defendant

17

18

 /s/ Kate Morris                       7/29/2022
19 KATE MORRIS                          Date
Deputy Federal Public Defender
20 Attorney for Defendant Mateus Pina
Mendes
21

22              <u>CERTIFICATION OF DEFENDANT</u>

23      I have read this agreement in its entirety.  I have had enough

24 time to review and consider this agreement, and I have carefully and

25 thoroughly discussed every part of it with my attorney.  I understand

26 the terms of this agreement, and I voluntarily agree to those terms.

27 I have discussed the evidence with my attorney, and my attorney has

28 advised me of my rights, of possible pretrial motions that might be

filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____                    7-29-22
MATEUS PINA MENDES                                  Date
Defendant

### CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Mateus Pina Mendes' attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set

forth in this agreement is sufficient to support my client's entry of

a guilty plea pursuant to this agreement.

  /s/ Kate Morris                              7/29/2022

KATE MORRIS                                    Date
Deputy Federal Public Defender
Attorney for Defendant Mateus Pina
Mendes

**EXHIBIT A**

1

2

3

4

5

6

7

8                   UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,          CR No.

11            Plaintiff,               I N F O R M A T I O N

12            v.                       [18 U.S.C. § 1343: Wire Fraud; 18
                                       U.S.C. § 981(a)(1)(C), 28 U.S.C.
13   MATEUS PINA MENDES,               § 2461(c): Criminal Forfeiture]

14            Defendant.

15

16        The Acting United States Attorney charges:

17                      [18 U.S.C. § 1343]

18   A.   INTRODUCTORY ALLEGATIONS

19        At times relevant to this Information:

20        Defendant and the Relevant Entities

21        1.   Defendant MATEUS PINA MENDES was a resident of Los Angeles,

22   California.

23        2.   Defendant MENDES claimed to be the owner of Multi One

24   Media, a California company purportedly located in Beverly Hills,

25   California.

26        3.   Defendant MENDES claimed to be the owner of CuratedHigh,

27   LLC, a company registered in Wyoming with a registered business

28   address in Beverly Hills, California.

4.    Defendant MENDES claimed to be the owner of Wakeover, a California company purportedly located in Beverly Hills, California.

5.    Defendant MENDES claimed to be the owner of Corner the Market, a California company purportedly located in Beverly Hills, California.

6.    Defendant MENDES claimed to be the owner of Made in One, a California company purportedly located in Los Angeles, California.

7.    Defendant MENDES controlled a personal checking account in his own name, maintained at Wells Fargo Bank ending in 3113 (the "Wells Fargo 3113 Account").

<u>The Paycheck Protection Program</u>

8.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 that was designed to provide emergency financial assistance to Americans suffering economic harm as a result of the COVID-19 pandemic.  One form of assistance provided by the CARES Act was the authorization of United States taxpayer funds in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

9.    In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business.  The PPP loan application required the small business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  One such certification required the applicant to affirm that "[t]he [PPP loan] funds w[ould] be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility

2

payments."  The applicant (through its authorized representative) was also required to acknowledge that "I understand that if the funds are used for unauthorized purposes, the federal government may pursue criminal fraud charges."  In the PPP loan application, the applicant was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees.  These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.  In addition, the applicant was required to provide documentation showing its payroll expenses.

10.  A business's PPP loan application was received and processed, in the first instance, by a participating financial institution.  If a PPP loan application was approved, the participating financial institution would fund the PPP loan using its own monies.

11.  PPP loan proceeds were required to be used by the business on certain permissible expenses, namely, payroll costs, interest on mortgages, rent, and utilities.  The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expenses within a designated period of time and used at least a minimum amount of the PPP loan proceeds towards payroll expenses.

The Economic Injury Disaster Loan Program

12.  The Economic Injury Disaster Loan Program ("EIDL") was a United States Small Business Administration ("SBA") program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

3

13.   The CARES Act authorized the SBA to provide EIDL loans of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

14.   To obtain an EIDL loan, a qualifying business was required to submit an application to the SBA and provide information about the business's operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster.  In the case of EIDL loans for COVID-19 relief, the 12-month period was the 12-month period from January 31, 2019, to January 31, 2020.  The applicant was also required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

15.   EIDL loan applications were submitted directly to the SBA and processed by the agency with support from a government contractor.  The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods sold.  Any funds issued under an EIDL loan were issued directly by the SBA.

16.   EIDL loan funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.  If the applicant also obtained a loan under the PPP, the EIDL loan funds could not be used for the same purpose as the PPP loan funds.

SBA-Approved PPP Service Providers and Lenders

17.   Company 1 was a technology company located in New York City, New York and headquartered in Delaware that engaged in lending to small businesses.  Company 1 participated in the SBA's PPP as an

4

SBA-approved PPP lender.  Small businesses seeking PPP loans could apply to Company 1 for PPP loans.  Company 1 would review the loan applications and, if the application was approved for funding, Company 1 would disburse the loan funds to the applicant.

B.   <u>SCHEME TO DEFRAUD</u>

18.   Beginning in or around May 2020 and continuing through in or around March 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant MENDES, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud the SBA and SBA-approved lenders as to material matters, and to obtain money from the SBA and such lenders by means of materially false and fraudulent pretenses, representations, and promises.

19.   The fraudulent scheme operated and was carried out, in substance, as follows:

a.   Defendant MENDES made and caused to be made, false statements to the SBA, financial institutions, and other lenders in connection with the fraudulent applications for PPP and EIDL loans, including false representations regarding the number of employees to whom the companies had paid wages, the average monthly payroll, the gross receipts earned by the purported businesses, and false certifications that the loans would be used for permissible business purposes.

b.   Defendant MENDES electronically submitted, and caused to be submitted, false and fictitious documents to the SBA and financial institutions in support of the fraudulent PPP and EIDL loan applications, including false tax documents.

c.   In each of the PPP and EIDL applications submitted by defendant MENDES, he certified that, as the authorized representative of the businesses on whose behalf the applications were submitted, he knew and understood the terms and rules of the PPP and EIDL programs, and that the funds were to be used by the recipient to only pay certain authorized business expenses.

d.   Defendant MENDES knowingly misappropriated and misused the PPP and EIDL loan proceeds for his own personal benefit, including for expenses prohibited under the requirements of the PPP and EIDL programs, such as the purchase of cryptocurrency and gold coins for personal use and investment.

e.   From in or around May 2020 and continuing through in or around March 2021, in furtherance of his scheme, defendant MENDES submitted and caused to be submitted fraudulent PPP and EIDL loan applications seeking approximately $184,690.67, and actually received $143,283.67 in PPP and EIDL proceeds to which he was not entitled.

C.   USE OF AN INTERSTATE WIRE

20.   On or about July 29, 2020, in Los Angeles County, within the Central District of California, and elsewhere, for the purpose of executing the above-described scheme to defraud, namely, the misappropriation and misuse of the PPP loan proceeds fraudulently obtained for Multi One Media, defendant MENDES caused others to transmit, by means of wire communications in interstate commerce, approximately $20,500 in PPP loan proceeds from Company 1 into the Wells Fargo 3113 Account.

6

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), in the event of the defendant MATEUS PINA MENDES's conviction of the offense set forth in the sole count of this Information.

2.    Defendant MENDES, if so convicted, shall forfeit to the United States of America the following:

a.    All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offense; and

b.    To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant MENDES, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of defendant MENDES, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

STEPHANIE S. CHRISTENSEN
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

LORINDA I. LARYEA
Acting Chief, Fraud Section
Criminal Division
United States Department of
Justice

SCOTT PAETTY
Assistant United States Attorney
Deputy Chief, Major Frauds Section

JENNIFER BILINKAS
Trial Attorney, Fraud Section
Criminal Division
United States Department of
Justice

## CERTIFICATE OF SERVICE

I, **T. Montes**, declare:

That I am a citizen of the United States and a resident of or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:

**PLEA AGREEMENT FOR DEFENDANT MATEUS MENDES**

☐ Placed in a closed envelope for collection and inter-office delivery, addressed as follows:

☐ Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows:

☐ By hand delivery, addressed as follows:

☒ By email, as follows:
Kate Morris – <u>Kate Morris@fd.org</u>
Deputy Federal Public Defender
Office of the Federal Public Defender
321 E 2nd Street
Los Angeles, CA 90012

☐ By messenger, as follows:

☐ By Federal Express, as follows:

This Certificate is executed on August 15, 2022, at Los Angeles, California.  I certify under penalty of perjury that the foregoing is true and correct.

/s/
_____
**T. Montes**
Legal Assistant